620 S.E.2d 737

The STATE, Respondent,

v.

Edward FREIBURGER, Appellant.

No. 26042.

Supreme Court of South Carolina.

Heard May 18, 2005.
Decided Sept. 26, 2005.
Rehearing Denied Nov. 2, 2005.

John Dennis Delgado, John S. Nichols, of Bluestein & Nicholas, L.L.C., and Kathrine Haggard Hudgins, all of Columbia, for Appellant.

Attorney General Henry Dargan McMaster, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Jeffrey A. Jacobs, and Solicitor Warren Blair Giese, all of Columbia, for Respondent.

Justice WALLER:

This matter was certified to this Court from the Court of Appeals pursuant to Rule 204, SCACR. Freiburger was convicted of the 1961 murder of a Columbia taxi-cab driver. He was sentenced to life imprisonment. We affirm.

## FACTS

The victim in this case, John Orner, was a taxi-cab driver who regularly serviced soldiers at Fort Jackson in Columbia.

Orner received his last dispatch call at 11:15 p.m. on the evening of February 28, 1961 to go to the NCO club at the fort. When he did not return home from his shift the next morning, his family reported him missing. Orner's bloody cab was found around 7:30 a.m. on March 1, 1961, in the 1200 block of Assembly Street. Orner was not in the cab. His body was found on March 3, 1961, on the side of the road of Highway 601 in lower Richland County. He had died from a gunshot wound to the brain, consistent with having been shot in the head by a passenger sitting in the back seat of the cab. Forensics examinations revealed Orner had been killed by a gunshot wound from a .32 caliber bullet fired from a Harrington and Richardson (H & R) revolver.

Freiburger was a private in the army stationed at Fort Jackson in 1961. Pawn shop records revealed that on February 28, 1961, Freiburger purchased a .32 caliber H & R revolver, serial number 9948, from Capital Loan and Pawn Shop at 1214 Main Street. A month later, on March 29, 1961, Freiburger was stopped by a Tennessee Highway patrolman, Donald Meredith, at approximately 11:00 p.m. for hitchhiking in Newport, Tennessee. Meredith testified he stopped Freiburger because it was dangerous to be out walking or hitchhiking on the road as people had been struck by cars in the vicinity. Patrolman Meredith questioned Freiburger, then patted him down, discovering a .32 caliber loaded H & R revolver, serial number W9948. Meredith testified that, although Freiburger was not under arrest at the time of the pat down search, "he was going to be for hitchhiking, or I was going to take him back to the jail." Upon finding the weapon, Meredith arrested Freiburger for "carrying arms," and the gun was confiscated.

After Freiburger's arrest, Richland County authorities (investigating Orner's murder) requested and were given the H & R revolver seized by Patrolman Meredith. Testing on the weapon was inconclusive as to whether it was the weapon used in Orner's death. No charges were filed at that time. Forty years later, in August 2000, the Richland County Sheriff's Department reopened the Orner file. Re-testing of the gun and bullet fragments was initially inconclusive. However, SLED retained an independent expert, John Cayton, who concluded the weapon retrieved from Freiburger in 1961 was

the murder weapon. Freiburger was arrested and charged with murder. The jury convicted him, and he was sentenced to life imprisonment.

## ISSUES

1. Did the trial court properly admit the gun taken from Freiburger during the 1961 search in Tennessee?

2. Did the trial court err in denying Freiburger's motion to suppress the gun due to the State's failure to prove a sufficient chain of custody?

3. Did the trial court err in admitting certain pawnshop records under the Ancient Documents and Business Records as Evidence Act?

4. Did the trial court err in admitting evidence that Freiburger was at one time stationed at Fort Leavenworth, Kansas?

5. Did the court err in denying Freiburger's motion for a mistrial and/or for curative instructions as a result of the solicitor's improper comments during opening argument?

6. Did the court err in denying Freiburger's motion for a directed verdict?

### 1. 1961 SEARCH AND SEIZURE

Freiburger asserts the 1961 search and seizure of the H & R weapon was illegal, having exceeded the permissible scope of a *Terry*[1] search. The State contends the search was a lawful "search incident to arrest," such that the seizure was permissible. We agree with the State that the 1961 search of Freiburger was a lawful search incident to arrest.

Evidence seized in violation of the Fourth Amendment must be excluded from trial. *State v. Khingratsaiphon,* 352 S.C. 62, 572 S.E.2d 456 (2002), *citing Mapp v. Ohio,* 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Generally, a warrantless search is per se unreasonable and violates the Fourth Amendment prohibition against unreasonable searches and seizures. *State v. Dupree,* 319 S.C. 454, 462 S.E.2d 279

---

1. *Terry v. Ohio,* 392 U.S. 1, 19, n. 16, 88 S.Ct. 1868, 1879, 20 L.Ed.2d 889 (1968).

(1995). However, a warrantless search will withstand constitutional scrutiny where the search falls within one of several well recognized exceptions to the warrant requirement. *Id.* One such exception is in cases of a search incident to arrest. *State v. Ferrell*, 274 S.C. 401, 409, 266 S.E.2d 869, 873 (1980) (in the case of a lawful custodial arrest, the full search of a person does not require a search warrant and is considered reasonable under the Fourth Amendment). The burden of establishing probable cause and the existence of circumstances constituting an exception to the general prohibition against warrantless searches is upon the prosecution. *Dupree, supra; State v. Bultron*, 318 S.C. 323, 457 S.E.2d 616 (Ct.App.1995) (burden is upon State to justify warrantless search).

There are two historical rationales for the "search incident to arrest" exception to the warrant requirement: (1) the need to disarm the suspect in order to take him into custody, and (2) the need to preserve evidence for later use at trial. *Knowles v. Iowa*, 525 U.S. 113, 116, 119 S.Ct. 484, 142 L.Ed.2d 492 (1998). A search may be conducted incident to an arrest only if it is substantially contemporaneous with the arrest and is confined to the immediate vicinity of the arrest. *State v. Brown*, 289 S.C. 581, 347 S.E.2d 882 (1986). A warrantless search which precedes a formal arrest is valid if the arrest quickly follows. *State v. Moultrie*, 316 S.C. 547, 551, 451 S.E.2d 34, 37 (Ct.App.1994). *See also Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980) (search may precede a formal arrest if the officer has probable cause to arrest at the time of the search and the fruits of the search were not necessary to support probable cause to arrest).

As noted above, there are situations in which a warrantless search which immediately precedes an arrest is held lawful, in cases where the police officer is held to have had probable cause from the outset. *Moultrie, supra; Rawlings v. Kentucky.* The rationale for such a warrantless search is that it is permissible incident to a lawful arrest because of legitimate concerns for the safety of the officer and to prevent the destruction of evidence by the arrestee. *Chimel v. California*, 395 U.S. 752, 89 S.Ct. 2034, 23 L.Ed.2d 685 (1969) (when an arrest is made, it is reasonable for the arresting officer to search the person arrested in order to remove any weapons that the latter might seek to use in order to resist arrest or

effect his escape). *See also United States v. Robinson,* 414 U.S. 218, 94 S.Ct. 467, 38 L.Ed.2d 427 (1973).

■ At the *in camera* hearing, Trooper Meredith testified that, although Freiburger had not been arrested at the time of the pat down search, he was going to be arrested for hitchhiking, or taken back to the jail. Trooper Meredith went on to testify that "we did a safety search before we put somebody in the car. You check them to see if they have any weapons."

Freiburger maintains that because he was not under arrest at the time of the search, and because he was ultimately arrested only for carrying arms, the search was illegal and the gun seized in 1961 should have been suppressed at trial. We disagree. As noted above, one of the rationales for the exception to the warrant requirement in the case of a search incident to arrest is the need to disarm the suspect in order to take him into custody. Here, Trooper Meredith's testimony that Freiburger was going to be arrested for hitchhiking and/or transported to the jail provides a sufficient basis upon which to conduct a limited pat-down search. It would simply be unreasonable to expect a police officer, out on a deserted road at 11:00 p.m., to transport a suspect to the jail without first conducting a pat down search for weapons.

■ Moreover, the fact that Freiburger was not ultimately arrested for hitchhiking is not dispositive. As recently stated by the United States Supreme Court, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause .... 'the fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.'" *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 594, 160 L.Ed.2d 537 (2004), *citing Whren v. U.S.,* 517 U.S. 806, 813, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996), 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89. Accordingly, the mere fact that Trooper Meredith did not arrest Freiburger for hitchhiking but, instead, arrested him for carrying arms upon finding the weapon does not vitiate the reasonableness of the underlying search. We find the search conducted by Trooper Meredith was a legitimate search incident to arrest, necessary to ensure his safety in order to transport Freiburger to the

jail. As such, there was no fourth amendment violation and the trial court properly denied Freiburger's motion to suppress.

## 2. CHAIN OF CUSTODY

Freiburger next asserts the state failed to prove a sufficient chain of custody of the gun, such that it should have been excluded from evidence on this basis. Initially, we agree with the state that Freiburger has failed to preserve this issue for review.

During the motion in limine hearing, Freiburger objected to the weapon only on the ground that there had been an impermissible pat-down search. He renewed the same objection when the gun was introduced into evidence. Accordingly, as the argument he now advances was not raised and ruled on below, it is not preserved. *State v. Bailey,* 298 S.C. 1, 377 S.E.2d 581 (1989) (issue not preserved for appeal where one ground is raised below and another ground is raised on appeal). In any event, the trial court properly admitted the weapon.

While the chain of custody requirement is strict where fungible evidence is involved, where the issue is the admissibility of non-fungible evidence—that is, evidence that is unique and identifiable—the establishment of a strict chain of custody is not required: If the offered item possesses characteristics which are fairly unique and readily identifiable, and if the substance of which the item is composed is relatively impervious to change, the trial court is viewed as having broad discretion to admit merely on the basis of testimony that the item is the one in question and is in a substantially unchanged condition. *State v. Glenn,* 328 S.C. 300, 305–306, 492 S.E.2d 393, 395 (Ct.App.1997).

Given the serial number and markings on the gun, and the fact that a gun is a non-fungible item, we find the chain of custody established by the state in this case was sufficient.

## 3. ANCIENT DOCUMENTS/BUSINESS RECORDS EXCEPTION

Freiburger next contends the trial court erred in admitting certain pawn shop records pursuant to the Ancient Documents rule and the Business Records Exception, claiming

they were not properly authenticated by the state. We find this issue is not adequately preserved for review, and the record is, in any event, insufficient to enable this Court to make an intelligent review.

It appears Freiburger primarily objects to admission of the Capital Loan and Pawn receipt and records which indicate Freiburger purchased the H & R revolver on February 28, 1961. However, there is no objection to their admission during the testimony of Ms. Russ, the then 77 year old daughter of the pawn shop owner. In fact, certain exhibits were specifically entered without objection. To the extent that Freiburger did object, the objections came long after the documents had been received into evidence, most of which had been introduced into evidence without objection.

The rule is well established that if asserted errors are not presented to the lower Court, the question cannot be raised for the first time on appeal. *State v. Bellue*, 259 S.C. 487, 193 S.E.2d 121 (1972). Further, Freiburger has failed to present a sufficient record for review. *State v. Mitchell*, 330 S.C. 189, 194, 498 S.E.2d 642, 645 (1998) (the burden is on the appellant to provide a sufficient record for review).

Moreover, we find the testimony of Ms. Russ sufficiently authenticated the pawn shop records. The alleged deficiencies in Ms. Russ' testimony go to the weight of the pawn shop records, rather than their admissibility.

### 4. FORT LEAVENWORTH

Freiburger asserts reversible error in references to his being "stationed" at Fort Leavenworth, Kansas.[2] He asserts it is well-known Leavenworth is a military prison, and that, as such, this evidence was prejudicial. We disagree.

Contrary to Freiburger's contention, there was no mention of the fact that he was **incarcerated** at Leavenworth. Mere questioning as to whether he was **stationed** there simply does not equate with advising the jury he was confined in a military prison. Even assuming, *arguendo,* jurors were aware Leavenworth is a military prison, there is no reason to suspect they

---

2. Freiburger was sent to Fort Leavenworth in 1961 after his arrest by Trooper Meredith for carrying arms when it was learned he was AWOL from the army.

automatically believed he was imprisoned there, as opposed to having been being stationed there during his military career. We see no prejudice from admission of this testimony. *State v. Locklair*, 341 S.C. 352, 535 S.E.2d 420 (2000) (error without prejudice does not warrant reversal).

### 5. SOLICITOR'S OPENING COMMENTS

 Freiburger next asserts the trial court erred in denying his motion for a mistrial, or curative instructions, after the solicitor improperly commented, during opening arguments, that Freiburger had been arrested by the Tennessee Highway Patrol on March 29, 1961. We find no reversible error.

The jury in this case was well aware, both from the solicitor's opening argument and the testimony of Trooper Meredith, that Freiburger had been stopped in Tennessee on March 29, 1961 for hitchhiking, and that he was patted down by Meredith and a weapon retrieved and confiscated. The jury also learned that the weapon was subsequently turned over to the Richland County sheriff's department and became the focus of the investigation.

Given the jury's knowledge that Freiburger had been stopped and frisked, and the weapon retrieved from him, the fact that the jury also heard he was arrested for carrying arms was simply not prejudicial in his trial for murder. *State v. Locklair, supra* (error without prejudice does not warrant reversal).

### 6. DIRECTED VERDICT

 Finally, Freiburger asserts, the trial court erred in denying his motion for a directed verdict. We disagree.

 A defendant is entitled to a directed verdict when the State fails to produce evidence of the offense charged. *State v. Gentry*, 363 S.C. 93, 610 S.E.2d 494 (2005); *State v. Curtis*, 356 S.C. 622, 591 S.E.2d 600 (2004). In reviewing a motion for directed verdict, the trial judge is concerned with the existence of the evidence, not with its weight. *Id.* On appeal from the denial of a directed verdict, an appellate court must view the evidence in the light most favorable to the State. *Id.* If there is any direct evidence or substantial circumstantial evidence reasonably tending to prove the guilt of the accused, the Court must find the case was properly submitted to the jury. *Id.*

The evidence adduced at trial which tended to implicate Freiburger was as follows: 1) he was a soldier stationed at Fort Jackson on February 28, 1961, 2) he had a habit of pawning his personal property at downtown Columbia pawn shops, 3) he purchased a .32 caliber H & R revolver, serial number W9948, and bullets from the Capital Loan and Pawn shop on February 28, 1961, 4) the victim was shot on February 28, 1961 with a .32 caliber H & R revolver, 5) two days after the victim's cab was found, Freiburger stayed at a downtown motel in close proximity to where Victim's bloody cab was found, 6) Freiburger was arrested in Tennessee on March 29, 1961 carrying a .32 caliber H & R revolver, 7) a ballistics test conducted in 2001 indicated that the H & R revolver confiscated from Freiburger in 1961 was the same weapon which fired the shot killing the victim, and 8) Freiburger was evasive when talking to Richland County police investigators in Indiana in September 2000, claiming he did not recall having been in the army, or having been stationed at Fort Jackson.

Although circumstantial, we find the above-cited evidence sufficient to withstand Freiburger's motion for a directed verdict.

The judgment below is affirmed.

**AFFIRMED.**

MOORE, A.C.J., BURNETT, PLEICONES, JJ., and Acting Justice JAMES W. JOHNSON, JR., concur.