747 S.E.2d 784

**STATE of South Carolina, Respondent,**

v.

**Ervin GAMBLE, Petitioner.**

**Appellate Case No. 2011–192246.**

**No. 27307.**

Supreme Court of South Carolina.

Heard Jan. 24, 2013.

Decided Aug. 28, 2013.

Rehearing Denied Oct. 2, 2013.

---

Jerry Leo Finney and Stephanie Ruotolo Fajardo, both of The Finney Law Firm, Incorporated, of Columbia, for Petitioner.

Attorney General Alan Wilson, Chief Deputy Attorney General John W. McIntosh, Assistant Deputy Attorney General Salley W. Elliott, and Assistant Attorney General William M.

Blitch, Jr., all of Columbia, and Solicitor John Gregory Hembree, of North Myrtle Beach, for Respondent.

Chief Justice TOAL.

Ervin C. Gamble (Petitioner) challenges his conviction for heroin trafficking. We reverse.

## FACTUAL/PROCEDURAL HISTORY

On September 28, 2008, the Horry County Grand Jury indicted Petitioner for "attempt to distribute heroin" and "trafficking in heroin," in violation of sections 44–53–110 and –370 of the South Carolina Code, respectively.[1] However, at trial, the State elected to proceed only on the indictment charging Petitioner with trafficking, explaining that this decision rested, at least in part, on the fact that the confidential informant (CI) who provided critical information in the case died prior to trial.

At trial, the State moved to bar reference to the CI, arguing:

[T]he CI is immaterial to the trafficking case. The trafficking case is basically ... that: [Petitioner] drives up into the driveway ... He comes in there. They arrest him—based on the information that they had. And the CI, as you know Your Honor, is deceased. I guess my point is this, that: If we start to talk about the CI, then I think we're going to also have to start to talk about the fact that he's deceased.

Defense counsel conceded that he did not anticipate mentioning the CI, but expressed concern regarding how the State could demonstrate probable cause for the search of Petitioner's vehicle, and his subsequent arrest. The trial court refused to bar reference to the CI in a pre-trial motion, but stated that as the trial ran its course, the court would not "allow the jury to get confused" due to the CI's absence.

As its first witness, the State presented the police officer who arrested Petitioner. The officer testified that, while conducting an investigation into possible drug activity, he received information regarding a drug dealer called "Fats." Defense counsel objected, arguing:

---

1. S.C.Code Ann. §§ 44–53–110, –370 (Supp.2012).

For this officer to take the witness stand and say that they had gained information about a certain individual named "Fats[,]" that information was gained through hearsay.... He got that information from the [CI] in this case.... It is highly prejudicial if that person is not going to be called as a witness—and we know that he's not—for this witness to say that they had gained information about someone, that's hearsay.

The State argued that the officer did not offer this information for the truth of the matter asserted, but instead to explain the officer's actions. Defense counsel countered that the officer did offer the information for its truth: "The truth of the matter of why he was investigating this person, is that he had a conversation with someone. That's hearsay." The trial court held that the officer's testimony explained why police investigated Petitioner and decided to instruct the jury "not to take these statements as being truthful[,] that they are only to consider them to explain why the officer acted in the way he did." The trial court then issued the following instruction:

The testimony that [the officer] is giving regarding what was told to him by someone else is not being ... given or used under the assertion that the information was correct; or that the information was right. It is only being offered, and can only be considered by you, to explain why [the officer] acted in the way he did. So when he states that he was told something by someone else, whether or not it is true or not true is not your consideration as much as it is to determine or to explain why [the officer] acted in the way he did. So you cannot use it as proof of [Petitioner's] guilt to the extent that you think the truth—or the statement is false[,] only to explain [the officer's] actions.

Following this instruction, the officer's testimony resumed:

The State: Officer ... did you all have a tactical plan you had developed with ... regard to [Petitioner]?

The Officer: Yes, ma'am, we did.... Myself, along with other agents were in the area.... Planned on ... speaking with a person in regards to ... drugs.

The State: And as a result of that tactical plan, were you at some particular location?

The Officer: Yes ma'am, we were.

The State: Where were you located?

The Officer: Uh—the exact address?

The State: Yes sir.

The Officer: 72 Offshore Drive in the Murrells Inlet section of Horry County.

. . . .

The State: And at some point, did you make contact with [Petitioner]?

The Officer: Yes ma'am, that is correct.

The State: And how did that happen?

The Officer: We con—conducted a phone call. . . .

At this point, the State interrupted the officer, presumably to prevent him from running afoul of the trial court's ruling:

The State: I don't want you—I don't want you to tell us what you did. I want you to tell me if you happened to come into contact with [Petitioner].

The Officer: Yes ma'am, we came in . . . contact with [Petitioner]. He arrived at the location of 72 Offshore Drive. At that time he was arrested on a separate charge. Upon . . . being placed under arrest he was searched. . . . Located on his person . . . was an amount of . . . brown powdered substance which subsequently field tested for . . . heroin. . . . Located in his vehicle, in the center console of the vehicle, was also . . . additional amount of . . . brown powdered substance that field tested positive for heroin.

Following this testimony, the State requested the trial court admit the seized drugs into evidence. Defense counsel objected:

The foundation has not been laid. . . . We don't know about—He's going to testify that after an arrest on a separate charge, a search . . . I don't know if there is a basis for that arrest. I don't know what the charge was. I don't know if there was a consent to search. I know there wasn't a consent to search. And I don't believe that under the Constitution as provided by the 4th Amendment[2] . . . the

---

2. U.S. Const. amend. IV.

law of search and seizure ... they have the right to enter this into evidence at this time.

The trial court overruled defense counsel's objection, and admitted the drugs into evidence.

The jury found Petitioner guilty of "trafficking in heroin," and defense counsel moved for a judgment notwithstanding the verdict and requested a new trial. Defense counsel argued:

> There is a total lack of evidence in this case for the basis of the arrest. There's no evidence in the record that the arrest was lawful or unlawful.... There is no evidence in the record—or even what [Petitioner] was being arrested for; just that he was arrested, and that a search subsequent to that arrest brought about these drugs. There is no indicia of probable cause; no indication of reasonable suspicion for the arrest. If you cannot find that there is probable cause for the arrest—then we believe that it should be found that it did not exist. And therefore, judgment should not be granted against my client.

The trial court denied the motion, and sentenced Petitioner to twenty-five years' imprisonment. The court of appeals affirmed Petitioner's conviction in an unpublished opinion. *State v. Gamble*, Op. No. 2011–UP–095 (S.C.Ct.App. Mar. 10, 2011). This Court granted Petitioner's request for a writ of certiorari.

## ISSUES PRESENTED

I.  Whether the trial court erred in admitting narcotics evidence over Petitioner's objection that the State failed to provide the proper foundation.

II. Whether the trial court erred in denying Petitioner's motion for a new trial.

## STANDARD OF REVIEW

In criminal cases, this Court only reviews errors of law. *State v. Jacobs*, 393 S.C. 584, 586, 713 S.E.2d 621, 622 (2011). "[T]he admission of evidence is within the discretion of the trial court and will not be reversed by this Court absent an abuse of discretion." *State v. McDonald*, 343 S.C. 319, 325,

540 S.E.2d 464, 467 (2000) (citing *State v. Smith*, 337 S.C. 27, 34, 522 S.E.2d 598, 601 (1999)). "An abuse of discretion occurs when the trial court's ruling is based on an error of law." *Id.* (citing *Clark v. Cantrell*, 339 S.C. 369, 389, 529 S.E.2d 528, 539 (2000)).

## LAW/ANALYSIS

### I. Admission of Heroin

Petitioner argues that the trial court erred in admitting the seized heroin into evidence. We agree, as the State failed to demonstrate that the drugs were seized as part of a legally permissible search and seizure.[3]

The Fourth Amendment prohibits unreasonable search and seizure, and requires that evidence seized in violation of the Amendment be excluded from trial. *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002) (citing *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961)). "Warrantless searches and seizures are unreasonable absent a recognized exception to the warrant requirement." *State v. Brown*, 401 S.C. 82, 89, 736 S.E.2d 263, 266 (2012) (citation omitted). These exceptions include the following: (1) search incident to a lawful arrest; (2) hot pursuit; (3) stop and frisk; (4) automobile; (5) plain view; (6) consent; and (7) abandonment. *Id.* The prosecution bears the burden of establishing probable cause as well as the existence of circumstances constituting an exception to the general prohibition against warrantless searches and seizures. *State v. Moore*, 377 S.C. 299, 309, 659 S.E.2d 256, 261 (Ct.App.2008). "Probable cause is defined as a good faith belief that a person is guilty of a crime when this belief rests upon such grounds as would induce an ordinarily prudent and cautious person, under the circumstances, to believe likewise." *Wortman v. City of Spartanburg*, 310 S.C. 1, 4, 425 S.E.2d 18, 20 (1992).

---

3. The State asserts that Petitioner's argument is unpreserved. We disagree. While defense counsel could have articulated his objection more clearly, his objection adequately preserved the issue for this Court's review. *See State v. Brannon*, 388 S.C. 498, 502, 697 S.E.2d 593, 595 (2010) ("Error preservation rules do not require a party to use the exact name of a legal doctrine in order to preserve an issue for appellate review.").

The Record in the instant case is devoid of any evidence that police had probable cause to seize the drug evidence presented at trial. Although the arresting officer testified that the drugs were seized pursuant to a search incident to lawful arrest, it is not clear that the police had probable cause for the arrest. Specifically, we can only glean from the officer's testimony that he was present at a location where Petitioner later arrived, and upon Petitioner's arrival, he and another officer searched Petitioner and seized drugs.

Compare the facts of the instant case with those of *State v. Freiburger*, 366 S.C. 125, 620 S.E.2d 737 (2005). In that case, a police officer stopped the defendant for hitchhiking. *Id.* at 130, 620 S.E.2d at 739. The police officer questioned the defendant and conducted a pat-down search during which he discovered a .32 caliber revolver which later connected the defendant to a murder. *Id.* The defendant moved to suppress the weapon. *Id.* at 131, 620 S.E.2d at 740. The defendant argued that the search exceeded the permissible scope of a *Terry*[4] search, and that because he was not under arrest at the time of the search, the search was illegal and the gun should have been suppressed at trial. *Id.* at 131, 133, 620 S.E.2d at 740–41. However, at trial, the police officer testified in camera that he stopped the defendant because of recent accidents that had occurred involving people walking or hitchhiking on the same road, and that "we did a safety search before we put somebody in the car" to "check them to see if they have any weapons." *Id.* at 133, 620 S.E.2d at 741. This Court held that the seizure took place as part of a search incident to a lawful arrest. *Id.* The Court's decision rested primarily on one of the historical rationales for a search incident to a lawful arrest: the need to disarm the suspect in order to take him into custody. *Id.* at 132–33, 620 S.E.2d at 740–41 (noting that a search incident to arrest is also supported by the need to preserve evidence for later use at trial). In rejecting the defendant's claim, the Court explained:

As noted above, one of the rationales for the exception to the warrant requirement in the case of a search incident to arrest is the need to disarm the suspect in order to take him

---

4. *Terry v. Ohio*, 392 U.S. 1, 19 n. 16, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968).

into custody. Here, [the police officer's] testimony that [the defendant] was going to be arrested for hitchhiking and/or transported to the jail provides a sufficient basis upon which to conduct a limited pat-down search. It would simply be unreasonable to expect a police officer, out on a deserted road at 11:00 p.m., to transport a suspect to the jail without first conducting a pat down search for weapons.... Moreover, the fact that [the defendant] was not ultimately arrested for hitchhiking is not dispositive. As recently stated by the United States Supreme Court, an officer's "subjective reason for making the arrest need not be the criminal offense as to which the known facts provide probable cause.... '[T]he fact that the officer does not have the state of mind which is hypothecated by the reasons which provide the legal justification for the officer's action does not invalidate the action taken as long as the circumstances, viewed objectively, justify that action.' "

*Id.* at 133, 620 S.E.2d at 741 (finding police conducted a legitimate search incident to arrest and did not violate the Fourth Amendment) (citing *Devenpeck v. Alford,* 543 U.S. 146, 153, 125 S.Ct. 588, 160 L.Ed.2d 537 (2004)).

The Record in this case does not demonstrate that probable cause supported Petitioner's arrest. The officer's testimony describes Petitioner's arrival at a certain location, and Petitioner's subsequent arrest, but does not explain why these events triggered the search. Simply put, it is unknown what it was about Petitioner's arrival at the location that supported a good faith belief that Petitioner was guilty of a crime.

Additionally, the circumstances surrounding the search incident to arrest in this case do not contain any of the justifications discussed in *Freiburger*. For example, the officer's testimony did not allude to any need to disarm Petitioner for the officer's safety during transport, and any need to preserve evidence only arose after what appears to be a constitutionally infirm search and seizure. Thus, the trial court erred in admitting the drug evidence over Petitioner's objection that the evidence had been seized in contravention of the Fourth Amendment.[5]

---

5. Our judicial process is best served when defendants raise Fourth Amendment evidentiary objections through a pre-trial motion to sup-

Contrary to the dissent's view, the trial colloquies described *supra,* and certainly contained in the Record, demonstrate that nothing need be *inferred* regarding the State's inability to establish probable cause in this case. The dissent cites no authority for the proposition that a defendant's failure to file a motion to suppress somehow forecloses his right to challenge the evidence at trial. *See, e.g., State v. Goodstein,* 278 S.C. 125, 128, 292 S.E.2d 791, 793 (1982) ("[W]e have no rule in this State requiring that a pretrial motion be made to suppress allegedly illegally obtained evidence."). The dissent confuses a defendant's "right" [6] or "entitlement" [7] to certain evidentiary hearings with a compulsory rule mandating that the defendant request the evidentiary hearing or cede all other objections. This is not an accurate statement of the law. Furthermore, the dissent ignores the trial court's hearsay ruling, and to a larger extent the Record in this case, by somehow placing responsibility for the State's failure to establish probable cause on the defendant. Moreover, the dissent proposes a rule that essentially eviscerates the Fourth Amendment's probable cause standard. Under the dissent's view, if a police officer performs a search and seizure, and then testifies to finding drugs as a result of that search, there is no need for a determination as to whether probable cause supported the search.

---

press. The rules of evidence are not strictly applied at hearings on a motion to suppress. The atmosphere of these proceedings can facilitate broader discussion before the trial court regarding the circumstances surrounding the evidence's seizure, and promote efficiency by resolving evidentiary disputes prior to a trial's commencement. However, had Petitioner filed an unsuccessful motion to suppress, this would not have relieved him of the burden to make a contemporaneous objection if the evidence was later admitted at trial, and likewise, his failure to utilize the motion to suppress does not foreclose his right to challenge the evidence at trial.

6. *State v. Blassingame,* 271 S.C. 44, 47–48, 244 S.E.2d 528, 530 (1978) (finding the trial court erred in denying the defendant's request for a hearing outside the presence of the jury regarding the admission of evidence seized from the defendant's home).

7. *State v. Patton,* 322 S.C. 408, 411, 472 S.E.2d 245, 247 (1996) ("To be entitled to a suppression hearing under [*Blassingame*] a defendant must, by way of oral or written motion to the trial court, articulate specific factual and legal grounds to support his contention that evidence was obtained by conduct violative of his constitutional rights.")

██ The security and protection of persons and property provided by the Fourth Amendment are fundamental values. *Alderman v. United States,* 394 U.S. 165, 175, 89 S.Ct. 961, 22 L.Ed.2d 176 (1969). The dissent characterizes the protection of these sacrosanct rights as some type of reward for a defendant. This view of the Fourth Amendment is erroneous. Thus, we strongly disagree with the dissent's observation that proper adherence to the guarantees provided by the Fourth Amendment is somehow accurately viewed as rewarding a criminal.

## CONCLUSION

Our analysis of the trial court's evidentiary error is dispositive of Petitioner's case; thus, we need not reach his remaining issue. *See Futch v. McAllister Towing of Georgetown, Inc.,* 335 S.C. 598, 613, 518 S.E.2d 591, 598 (1999) (finding an appellate court need not address remaining issues on appeal when a decision in a prior issue is dispositive).

For the foregoing reasons, the court of appeals' decision is **REVERSED.**

BEATTY, KITTREDGE and HEARN, JJ., concur.

PLEICONES, J., dissenting in a separate opinion.

Justice PLEICONES.

I respectfully dissent. The majority holds that the record in this case is devoid of any evidence that the police had probable cause to seize the drug evidence presented at trial. In my view, petitioner prevented the introduction of evidence on the issue of probable cause and should not be permitted to benefit from his deliberate avoidance of a suppression hearing on the issue. Thus, I respectfully dissent.

The record in this case shows that some pretrial discussions took place regarding the effect the confidential informant's death had on the case, although the substance of those discussions does not appear in the record. It can, nonetheless, be inferred from the record that petitioner was contesting the introduction of the drug evidence as lacking a foundation because the State would be unable to establish probable cause for the initial arrest due to the unavailability of the confiden-

tial informant. Upon questioning, petitioner specifically declined to make a suppression motion before trial. During trial, he objected to the introduction of the drug evidence. At the conclusion of the State's case, petitioner made a directed verdict motion, arguing that the State had failed to present evidence of probable cause for petitioner's arrest. Although the State offered to present its evidence for probable cause in a hearing outside the presence of the jury, petitioner made no request for such a hearing, arguing only that the State had failed to establish probable cause. At oral argument before this Court, petitioner argued that the judge's failure to conduct the hearing in response to the State's offer was error.

I disagree. The defendant's failure to request a hearing outside the presence of the jury to determine whether probable cause existed for the arrest constitutes a concession that the evidence is competent. *See State v. Rankin,* 3 S.C. 438, 448 (1872) (defendant's failure to object to evidence is a concession of its competency); *State v. Blassingame,* 271 S.C. 44, 47–48, 244 S.E.2d 528, 530 (1978) ("Whenever evidence is introduced that was allegedly obtained by conduct violative of the defendant's constitutional rights, the defendant is entitled to have the trial judge conduct an evidentiary hearing out of the presence of the jury at this threshold point to establish the circumstances under which it was seized."); *State v. Patton,* 322 S.C. 408, 411, 472 S.E.2d 245, 247 (1996) (to be entitled to such a hearing, the defendant must state specific grounds on which he objects to admission of evidence). Petitioner repeatedly declined to avail himself of the opportunity to test the State's evidence of probable cause in a suppression hearing.[8]

---

8. It may be that petitioner sought to avoid a hearing outside the presence of the jury where neither the hearsay rule nor the right to confront adverse witnesses would apply. *See State v. Pressley,* 288 S.C. 128, 131, 341 S.E.2d 626, 628 (1986) (approving use of hearsay evidence in a hearing before a judge to determine the admissibility of evidence); *State v. Burney,* 294 S.C. 61, 62, 362 S.E.2d 635, 636 (1987) (State not required to reveal name of confidential informant unless an active participant in the criminal transaction). Indeed, petitioner implicitly recognized the existence of evidence of probable cause in his attempt to argue it was inadmissible: "We know that they made ... an arrest for attempt to distribute.... That ... arrest was based on hearsay from an informant that's not here to testify today."

Thus, to the extent the record fails to establish probable cause for petitioner's arrest, it is of petitioner's doing. *State v. Stroman*, 281 S.C. 508, 316 S.E.2d 395 (1984)(defendant cannot complain of an error induced by his own conduct); *State v. Winestock*, 271 S.C. 473, 474, 248 S.E.2d 307, 307–308 (1978) (burden is on appellant to present sufficient record from which appellate court can determine whether trial court committed error). The majority shifts the burden to the State to place evidence of probable cause in the record contrary to well-established law that the defendant must challenge admissibility of evidence offered by the State. Likewise, the majority's comparison of the evidence in this record with the evidence in a case in which a suppression hearing was conducted is entirely inappropriate. *See State v. Freiburger*, 366 S.C. 125, 133, 620 S.E.2d 737, 741 (2005) (discussing officer's testimony at *in camera* hearing). The majority rewards petitioner's default, whether intentional or unintentional, with a reversal of his conviction.

Moreover, in this case the arresting officer testified without objection that petitioner was arrested and that in searches incident thereto a brown powdered substance that field tested positive for heroin was discovered on petitioner's person and in his car. Because the drugs themselves were cumulative once the officer's testimony had been admitted without objection, their admission was harmless even if improper. *State v. Johnson*, 298 S.C. 496, 499, 381 S.E.2d 732, 733 (1989); *State v. Rice*, 375 S.C. 302, 332, 652 S.E.2d 409, 424 (Ct.App.2007), *overruled on other grounds by State v. Byers*, 392 S.C. 438, 710 S.E.2d 55 (2011) (finding admission of documentary evidence harmless even if improper because cumulative to testimony admitted for same purpose).

Thus, I respectfully dissent.