# The Supreme Court of South Carolina

State of South Carolina, Appellant,

v.

Kathryn Martin Key, Respondent,

Appellate Case No. 2017-001013

---

## ORDER

---

The petition for rehearing is granted, and we dispense with further briefing. After careful consideration of the petition, the majority opinion is unchanged. Justice Few has issued a concurring opinion. These opinions are attached.

s/ John W. Kittredge          A.C.J.

s/ Kaye G. Hearn          J.

s/ John Cannon Few          J.

s/ George C. James, Jr.          J.

s/ Thomas E. Huff          A.J.

Columbia, South Carolina
September 2, 2020

**THE STATE OF SOUTH CAROLINA**
**In The Supreme Court**

State of South Carolina, Appellant,

v.

Kathryn Martin Key, Respondent.

Appellate Case No. 2017-001013

———————

Appeal from Greenville County
Edward W. Miller, Circuit Court Judge

———————

Opinion No. 27971
Heard November 20, 2019 – Filed May 13, 2020

Re-Filed September 2, 2020

———————

**VACATED AND REMANDED**

———————

Attorney General Alan McCrory Wilson and Assistant
Attorney General Joshua Abraham Edwards, both of
Columbia; and Solicitor William Walter Wilkins III, of
Greenville, for Appellant.

James H. Price III and Elizabeth Powers Price, both of
Price Law Firm P.A., of Greenville; and J. Falkner Wilkes,
of Greenville, for Respondent.

———————

**JUSTICE JAMES:** Kathryn Martin Key was convicted in the summary court of driving under the influence (DUI). Her conviction was based upon the testing of her blood, which was drawn without a warrant while she was unconscious. The circuit court reversed and remanded, finding the summary court should have suppressed evidence of Key's blood alcohol concentration because the State did not obtain a warrant. The State appealed to the court of appeals, and the appeal was transferred to this Court.

While the State's appeal was pending in this Court, the United States Supreme Court decided *Mitchell v. Wisconsin*, 139 S. Ct. 2525 (2019). In *Mitchell*, the Supreme Court held for the first time that, generally, law enforcement is permitted to draw the blood of an unconscious DUI suspect without a search warrant pursuant to the exigent circumstances exception to the warrant requirement. However, the Supreme Court acknowledged the possibility of an "unusual" case presenting an exception to this new general rule. The *Mitchell* Court determined the defendant should be given the opportunity to establish the applicability of the exception to the general rule and remanded the case to the trial court for that purpose.

We have carefully considered the *Mitchell* holding and conclude we will not impose upon a defendant the burden of establishing the absence of exigent circumstances. We hold the burden of establishing the existence of exigent circumstances remains upon the State. The exigent circumstances issue in this case was not ruled upon by the summary court; therefore, we remand this case to the summary court for further proceedings consistent with this opinion.

## BACKGROUND

At approximately 8:45 a.m. on December 10, 2015, Key was driving a motor vehicle on Muddy Ford Road in Greenville County. She drove across the center-line, crashed her vehicle into the driver's side of an oncoming vehicle, and then drove off the road and struck a tree. When South Carolina State Trooper Aaron Campbell arrived on scene at 8:57 a.m., Key was on a stretcher and was being loaded into an ambulance. Trooper Campbell approached to ask Key for her name and phone number, but one of the paramedics stopped him and said, "Man, she needs to go [to the hospital]." The ambulance departed, so Trooper Campbell was unable to question Key at the scene.

Trooper Campbell stayed at the scene for over an hour to investigate the accident. He photographed the scene, interviewed the driver of the other vehicle,

and completed an accident report. Trooper Campbell recovered an almost-empty mini bottle of Jack Daniel's liquor from the glove compartment of Key's vehicle. "Wet residue" in the bottle led Trooper Campbell to believe the liquor had been "freshly consumed." Trooper Campbell completed his investigation and drove to Greenville Memorial Hospital to charge Key with DUI and open container.

Trooper Campbell located Key in the emergency room trauma bay. She was unconscious and was intubated due to the severity of her injuries. Trooper Campbell arrested the unconscious Key for DUI at 10:35 a.m. and read her implied consent rights[1] to her at 10:36 a.m. Without seeking a search warrant, Trooper Campbell asked a nurse to draw Key's blood. Her blood was drawn at 10:45 a.m. (approximately two hours after the accident), and testing revealed her blood alcohol concentration (BAC) was .213%. Key then spent five days in the intensive care unit.

Key moved pre-trial to have the evidence of her BAC suppressed. She argued Trooper Campbell's failure to obtain a warrant violated the Fourth Amendment to the United States Constitution and Article I, section 10 of the South Carolina Constitution. Key contended there were no exigent circumstances to excuse the State's failure to obtain a warrant. She also contended South Carolina's implied consent statute is unconstitutional. Key did not argue Trooper Campbell lacked probable cause to suspect she had been driving under the influence.

In response, the State argued the implied consent statute is constitutional and was followed by Trooper Campbell. The State asserted the blood was legally drawn

---

[1] *See* S.C. Code Ann. § 56-5-2950(A) (2018) (providing a person arrested for DUI is considered to have given consent to certain chemical tests for the purpose of determining the presence of drugs or alcohol); *id.* (providing a blood test may be conducted if a breath test cannot be administered and stating the blood sample must be collected within three hours of the arrest); § 56-5-2950(B)(1) (requiring the person suspected of DUI to be given a written copy and verbally informed that "the person does not have to take the test or give the samples, but that the person's privilege to drive must be suspended or denied for at least six months with the option of ending the suspension if the person enrolls in the Ignition Interlock Device Program, if the person refuses to submit to the test, and that the person's refusal may be used against the person in court"); § 56-5-2950(H) ("A person who is unconscious or otherwise in a condition rendering the person incapable of refusal is considered to be informed and not to have withdrawn the consent provided by subsection (A) of this section.").

because Key statutorily consented to the blood draw by operating a motor vehicle and by not withdrawing her implied consent. The State noted, "Judge, this is not a case where we have to look for exigent circumstances. We are not looking for an exception to the warrant requirement." The summary court denied Key's motion to suppress.

The case proceeded to a bench trial before the summary court. Trooper Campbell testified about his investigation of the accident and confirmed he did not seek a warrant before directing a nurse to draw Key's blood at the hospital. The parties stipulated there was a magistrate on duty in Greenville County at the time Key was arrested and her blood drawn. On cross-examination, Trooper Campbell acknowledged the on-duty magistrate was only three miles from the hospital on the morning of the accident. Trooper Campbell confirmed Key was unconscious when he read Key's implied consent rights to her and when the nurse drew her blood. A SLED toxicologist testified Key's BAC was .213%.

The summary court found Key guilty of DUI, imposed a fine, and sentenced her to the five days she "served" while in intensive care. Key appealed her conviction to the circuit court. In addition to the consent argument it presented to the summary court, the State argued to the circuit court that the record was replete with evidence of exigent circumstances, including the wreck itself, Trooper Campbell staying behind at the scene to interview the accident victim and conduct his investigation, and Key's unconscious state. In a written order, the circuit court reversed Key's conviction and remanded the case for a new trial, ruling the blood alcohol evidence was obtained pursuant to an unlawful search and seizure in violation of both the Fourth Amendment to the United States Constitution and the South Carolina Constitution. The circuit court rejected the State's position that the implied consent statute permitted a warrantless blood draw but did not address the State's exigent circumstances argument. The State moved for reconsideration and again noted its argument of exigent circumstances. The circuit court denied the State's motion without addressing the exigent circumstances issue.

The State appealed to the court of appeals, and the appeal was transferred to this Court pursuant to Rules 203(d)(1)(A)(ii) and 204(a) of the South Carolina Appellate Court Rules.

# DISCUSSION

The State argues the circuit court erred in reversing Key's conviction and remanding for a new trial. In its brief to this Court, the State argued the circuit court erred in finding a warrant was required to draw Key's blood because (1) exigent circumstances were present and (2) Key validly consented under the implied consent statute and did not revoke her consent. During oral argument, the State abandoned its implied consent argument and proceeded solely under its exigent circumstances argument. Therefore, we will address only the latter issue.

## A.    Preservation

Key argues the State's exigent circumstances argument is not preserved for appellate review because the argument was not raised to or ruled upon by the summary court. We disagree.

Before the summary court, the State argued a warrant was unnecessary because Key, by driving a motor vehicle, consented to having her blood drawn under the implied consent statute. The State argued there was no need to address the issue of exigent circumstances because the consent issue was dispositive. Since the State prevailed on the issue of consent, it was unnecessary for the State to present additional arguments to the summary court as to why a warrant was not required. *See I'On, L.L.C. v. Town of Mt. Pleasant*, 338 S.C. 406, 419, 526 S.E.2d 716, 723 (2000) ("It would be inefficient and pointless to require a respondent to return to the judge and ask for a ruling on other arguments to preserve them for appellate review. It also could violate the principle that a court usually should refrain from deciding unnecessary questions."). Nothing in the trial record indicates the State conceded to the summary court that there were no exigent circumstances.

When Key appealed to the circuit court, the State argued as an additional sustaining ground that the record "is replete with exigent circumstances," and cited Key's unconscious state as one of those circumstances. *See I'On*, 338 S.C. at 419-20, 526 S.E.2d at 723 ("[A] respondent—the 'winner' in the lower court—may raise on appeal any additional reasons the appellate court should affirm the lower court's ruling, regardless of whether those reasons have been presented to or ruled on by the lower court. . . . The basis for respondent's additional sustaining grounds must appear in the record on appeal[.]"). Here, the basis for the additional sustaining ground appears in the record on appeal. Because the State raised the issue of exigent circumstances to the circuit court, raised the issue again in its motion for

reconsideration, and raised the issue on appeal to this Court, the exigent circumstances issue is preserved for review.

## B. Exigent Circumstances

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. amend. IV.

It is settled that the collection of a person's blood for BAC testing is a search and a seizure under the Fourth Amendment. *See Schmerber v. California*, 384 U.S. 757, 767 (1966); *Birchfield v. North Dakota*, 136 S. Ct. 2160, 2173 (2016). "The Fourth Amendment to the United States Constitution prohibits unreasonable searches and seizures. Evidence seized in violation of the Fourth Amendment must be excluded from trial." *State v. Khingratsaiphon*, 352 S.C. 62, 69, 572 S.E.2d 456, 459 (2002). "Although the text of the Fourth Amendment does not specify when a search warrant must be obtained, this Court has inferred that a warrant must generally be secured." *Kentucky v. King*, 563 U.S. 452, 459 (2011). However, because the touchstone of the Fourth Amendment is reasonableness, the general presumption that a warrant is required may be overcome in certain situations. *Id.* Consent and exigent circumstances are two of the recognized exceptions to the general warrant requirement. *See State v. Brown*, 401 S.C. 82, 89, 736 S.E.2d 263, 266 (2012); *Missouri v. McNeely*, 569 U.S. 141, 148-49 (2013). Most important to the issue before us is the settled principle that "the burden is upon the State to justify a warrantless search." *State v. Peters*, 271 S.C. 498, 501, 248 S.E.2d 475, 477 (1978). At no time has this Court placed the burden on a defendant to establish that an exception to the warrant requirement does <u>not</u> exist.

"The exigent circumstances exception allows a warrantless search when an emergency leaves police insufficient time to seek a warrant." *Birchfield*, 136 S. Ct. at 2173. "It permits, for instance, the warrantless entry of private property when there is a need to provide urgent aid to those inside, when police are in hot pursuit of a fleeing suspect, and when police fear the imminent destruction of evidence." *Id.*

"[B]ecause an individual's alcohol level gradually declines soon after he stops drinking, a significant delay in testing will negatively affect the probative value of the results." *McNeely*, 569 U.S. at 152.

The United States Supreme Court has addressed the constitutionality of warrantless blood draws in several DUI cases. *See Schmerber*, 384 U.S. at 770-71 (holding the warrantless blood draw of a DUI suspect was valid because the law enforcement officer, dealing with a car accident, could "reasonably have believed that he was confronted with an emergency, in which the delay necessary to obtain a warrant, under the circumstances, threatened 'the destruction of evidence'"); *McNeely*, 569 U.S. at 165 (holding the determination of whether a warrantless blood draw of a DUI suspect qualifies as an exigent circumstance involves a case-by-case analysis of the totality of the circumstances and that the natural dissipation of alcohol in the bloodstream alone does not establish a per se exigency); *Birchfield*, 136 S. Ct. at 2184 (holding a lawful search incident to arrest of a DUI suspect permits a warrantless breath test but not a warrantless blood draw).

In *Mitchell*, the United States Supreme Court held the exigent circumstances exception to the warrant requirement "almost always" justifies the warrantless drawing of blood from unconscious DUI suspects. 139 S. Ct. at 2531. Three justices joined Justice Alito's lead opinion. Justice Thomas provided the fifth vote, concurring in the judgment but explaining he would impose an even more expansive rule that the natural metabolization of alcohol in the bloodstream creates an exigent circumstance in <u>every</u> DUI case as soon as law enforcement has probable cause to believe the driver is impaired—"regardless of whether the driver is conscious." *Id.* at 2539 (Thomas, J., concurring).[2]

---

[2] *See Marks v. United States*, 430 U.S. 188, 193 (1977) ("When a fragmented Court decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .'" (quoting *Gregg v. Georgia*, 428 U.S. 153, 169 n.15 (1976))); *King v. Palmer*, 950 F.2d 771, 781 (D.C. Cir. 1991) (en banc) (Silberman, J., concurring) (providing the rule illustrated by *Marks* applies "only when one opinion is a logical subset of other, broader opinions"); *id.* ("In essence, the narrowest opinion must represent a common denominator of the Court's reasoning; it must embody a position implicitly approved by at least five Justices who support the judgment.").

In *Mitchell*, the Sheboygan, Wisconsin Police Department received a report of a drunk driver, and the responding officer found the defendant wandering on foot around a nearby lake, stumbling and slurring his words. A preliminary breath test revealed his BAC was .24%—triple the Wisconsin legal limit. The defendant was arrested for DUI, and law enforcement drove him to the police station for a more reliable breath test. By the time the squad car reached the station, the defendant was too lethargic to submit to a breath test. The officer decided to take the defendant to a nearby hospital for a blood test, but the defendant lost consciousness by the time they arrived at the hospital. While the defendant was still unconscious, the officer read the defendant his statutory implied consent rights. After hearing no response from the defendant and without obtaining a warrant, the officer asked hospital staff to draw the defendant's blood. The blood was collected ninety minutes after the time of arrest, and testing revealed a BAC of .222%. The defendant moved to suppress the BAC evidence, arguing the warrantless blood draw violated his Fourth Amendment right against unreasonable searches.

The *Mitchell* plurality explained the dilemma it believed officers would face when presented with an unconscious DUI suspect—"It would force [law enforcement officers] to choose between prioritizing a warrant application, to the detriment of critical health and safety needs, and delaying the warrant application, and thus the BAC test, to the detriment of its evidentiary value and all the compelling interests served by BAC limits." *Id.* at 2538. The plurality emphasized that such a scenario is the very reason the exigency exception exists and concluded exigent circumstances almost always exist when (1) blood alcohol evidence is dissipating and (2) "some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application." *Id.* at 2537. The plurality concluded both conditions are satisfied when a DUI suspect is unconscious and concluded "when a driver is unconscious, the general rule is that a warrant is not needed." *Id.* at 2531. It summarized:

> In such cases, [where the DUI suspect is unconscious and unable to provide a breath test,] the exigent-circumstances rule almost always permits a blood test without a warrant. When a breath test is impossible, enforcement of the drunk-driving laws depends upon the administration of a blood test. And when a police officer encounters an unconscious driver, it is very likely that the driver would be taken to an emergency room and that his blood would be drawn for diagnostic purposes even if the police were not seeking BAC information. In

addition, police officers most frequently come upon unconscious drivers when they report to the scene of an accident, and under those circumstances, the officers' many responsibilities—such as attending to other injured drivers or passengers and preventing further accidents—may be incompatible with the procedures that would be required to obtain a warrant. Thus, when a driver is unconscious, the general rule is that a warrant is not needed.

*Id.*

While the Supreme Court concluded the new general rule will "almost always" apply, the Court acknowledged there may be an "unusual case" in which "a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, <u>and</u> that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties." *Id.* at 2539 (emphasis added). Because the defendant did not have the opportunity to make such a showing, the Court remanded the case to the Wisconsin state court to allow the defendant to attempt to make the showing. *Id.*

The *Mitchell* plurality closed with the following:

When police have probable cause to believe a person has committed a drunk-driving offense and the driver's unconsciousness or stupor requires him to be taken to the hospital or similar facility before police have a reasonable opportunity to administer a standard evidentiary breath test, they may almost always order a warrantless blood test to measure the driver's BAC without offending the Fourth Amendment. We do not rule out the possibility that in an unusual case a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties.

*Id.*

The people have the right under the Fourth Amendment "to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures . . . and no Warrants shall issue, but upon probable cause[.]" We cannot sponsor the notion of requiring a defendant to prove that this right—a right she

already possesses—exists in any given case.  We must therefore part company with the *Mitchell* Court, as we will not impose upon a defendant the burden of establishing the absence of exigent circumstances.  We have consistently held the prosecution has the sole burden of proving the existence of an exception to the warrant requirement.  *See, e.g.*, *State v. Bruce*, 412 S.C. 504, 510, 772 S.E.2d 753, 756 (2015); *State v. Robinson*, 410 S.C. 519, 530, 765 S.E.2d 564, 570 (2014); *State v. Gamble*, 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013); *State v. Weaver*, 374 S.C. 313, 319-20, 649 S.E.2d 479, 482 (2007); *State v. Brown*, 289 S.C. 581, 587, 347 S.E.2d 882, 885 (1986); *State v. Huggins*, 275 S.C. 229, 232, 269 S.E.2d 334, 335 (1980).  Likewise, the United States Supreme Court and all state and lower federal courts have consistently held the State bears the burden of establishing exigent circumstances.  *See, e.g.*, *Welsh v. Wisconsin*, 466 U.S. 740, 750 (1984) (stating "the burden is on the government to demonstrate exigent circumstances");[3] *McDonald v. United States*, 335 U.S. 451, 456 (1948) ("We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative."); *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013) ("The government bears the burden of proof in justifying a warrantless search or seizure.").[4]

---

[3] *See also Welsh*, 466 U.S. at 749-50 (emphasis added) (internal citation omitted) ("Prior decisions of this Court . . . have emphasized that exceptions to the warrant requirement are 'few in number and carefully delineated,' and that *the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches* or arrests.  Indeed, the Court has recognized only a few such emergency conditions[.]" (citing *Schmerber*, 384 U.S. at 770-71)).

[4] In light of our holding, we need not address Key's argument that Article I, section 10 of the South Carolina Constitution requires exclusion of evidence of her BAC.  Article I, section 10 largely mirrors the Fourth Amendment but adds the express prohibition against unreasonable invasions of privacy: "The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures *and unreasonable invasions of privacy* shall not be violated . . . ."  S.C. Const. art. I, § 10 (emphasis added).  "The South Carolina Constitution, with an express right to privacy provision included in the article prohibiting unreasonable searches and seizures, favors an interpretation offering a higher level of privacy

## CONCLUSION

In any given case, the unconsciousness of a DUI suspect might indeed be a significant factor—or even the determining factor—in the analysis of the exigent circumstances issue. However, in any given case, unconsciousness might not be a significant factor. In this case, the question of the existence of exigent circumstances was not litigated in the trial court. We therefore vacate the circuit court's reversal of Key's conviction, and we remand this case to the summary court for a determination of whether the exigent circumstances exception to the warrant requirement applies. The State shall have the burden of establishing the applicability of the exception, and the summary court shall base its ruling upon its view of the totality of the circumstances. Those circumstances may well include the very circumstances emphasized by the *Mitchell* Court.

If the summary court determines the exception applies, Key's conviction shall stand. If the summary court determines the exception does not apply, Key will receive a new trial with the BAC result suppressed. We express no opinion at this stage as to whether the exigent circumstances exception does or does not apply in this case.

**VACATED AND REMANDED.**

**KITTREDGE, Acting Chief Justice, HEARN, FEW, JJ., and Acting Justice Thomas E. Huff, concur. FEW, J., concurring in a separate opinion.**

---

protection than the Fourth Amendment." *State v. Forrester*, 343 S.C. 637, 645, 541 S.E.2d 837, 841 (2001).

**JUSTICE FEW:** I concur with the majority opinion. I write to address the State's argument this Court does not understand the Supremacy Clause. *See* U.S. CONST. art. VI, cl. 2 ("This Constitution . . . shall be the supreme law of the land; and the judges in every state shall be bound thereby."). The argument is based on the State's erroneous contention we refuse to be bound by the following statements from the plurality opinion in *Mitchell v. Wisconsin*, 139 S. Ct. 2525, 204 L. Ed. 2d 1040 (2019).

> [I]n a narrow but important category of cases: those in which the driver is unconscious and therefore cannot be given a breath test . . . , we hold, the exigent-circumstances rule almost always permits a blood test without a warrant.

139 S. Ct. at 2531, 204 L. Ed. 2d at 1043.

> Thus, when a driver is unconscious, the general rule is that a warrant is not needed.

139 S. Ct. at 2531, 204 L. Ed. 2d at 1044.

> We do not rule out the possibility that in an unusual case a defendant would be able to show that his blood would not have been drawn if police had not been seeking BAC information, and that police could not have reasonably judged that a warrant application would interfere with other pressing needs or duties. Because Mitchell did not have a chance to attempt to make that showing, a remand for that purpose is necessary.

139 S. Ct. at 2539, 204 L. Ed. 2d at 1052.

The majority states we "part company with the *Mitchell* Court," but that statement does not mean—as the State suggests—we disagree with *Mitchell* and refuse to follow it. Rather, we have complied with the Supremacy Clause—as we must—by interpreting and applying the Fourth Amendment in

light of all Supreme Court precedent, including *Mitchell*. Respectfully, however, the *Mitchell* plurality made this task difficult. The plurality's statements are confusing and misleading, and difficult to apply in light of other Supreme Court decisions.

To be more specific, the statements by the plurality create several significant problems. First, the Supreme Court and all state and lower federal courts have consistently held the State bears the burden of establishing exigent circumstances. *See, e.g.*, *Welsh v. Wisconsin*, 466 U.S. 740, 750, 104 S. Ct. 2091, 2098, 80 L. Ed. 2d 732, 743 (1984) (stating "the burden is on the government to demonstrate exigent circumstances"); 466 U.S. at 749-50, 104 S. Ct. at 2097-98, 80 L. Ed. 2d at 743 ("Prior decisions of this Court . . . have emphasized that exceptions to the warrant requirement are 'few in number and carefully delineated,' and that *the police bear a heavy burden when attempting to demonstrate an urgent need that might justify warrantless searches* or arrests. Indeed, the Court has recognized only a few such emergency conditions . . . ." (emphasis added) (citing *Schmerber v. California*, 384 U.S. 757, 770-71, 86 S. Ct. 1826, 1835-36, 16 L. Ed. 2d 908, 919-20 (1966)); *United States v. McGee*, 736 F.3d 263, 269 (4th Cir. 2013) ("The government bears the burden of proof in justifying a warrantless search or seizure."); *State v. Gamble*, 405 S.C. 409, 416, 747 S.E.2d 784, 787 (2013) ("The prosecution bears the burden of establishing . . . the existence of circumstances constituting an exception" to the warrant requirement); *see also* 6 Wayne R. LaFave, *Search and Seizure: A Treatise on the Fourth Amendment* § 11.2(b) (5th ed. 2012) (stating "most states follow the rule . . . : if the search or seizure was pursuant to a warrant, the defendant has the burden of proof; but if the police acted without a warrant the burden of proof is on the prosecution") (footnote omitted).

Under these cases, a defendant is not required to make any showing that exigent circumstances do not exist. Therefore, the *Mitchell* plurality—by stating a defendant should be given a "chance to attempt to make that showing"—either (1) implicitly overruled more than seventy years of its own

precedent[5] without acknowledging it was doing so,[6] or (2) inattentively used loose language to describe what it meant to say was *the State's* "chance to attempt to make that showing."  It has to be the latter.

Second, the Court's use of the phrase "general rule" surely was not intended to actually create a "rule."[7]  Rather, the Court simply anticipated that the "general result" of a suppression hearing will be the trial court's finding that the government proved the warrantless search reasonable because of exigency when a suspected DUI driver is unconscious.  The "rule" applicable here is that a warrantless search ordinarily will be found unreasonable under the Fourth Amendment.  The "exception" to the rule is that exigent

---

[5] *See United States v. Jeffers*, 342 U.S. 48, 51, 72 S. Ct. 93, 95, 96 L. Ed. 59, 64 (1951) (stating that to establish an exception to the warrant requirement, "the burden is on those seeking the exemption to show the need for it"); *McDonald v. United States*, 335 U.S. 451, 456, 69 S. Ct. 191, 193, 93 L. Ed. 153, 158 (1948) ("We cannot be true to that constitutional requirement and excuse the absence of a search warrant without a showing by those who seek exemption from the constitutional mandate that the exigencies of the situation made that course imperative."); *see also Missouri v. McNeely*, 569 U.S. 141, 152-53, 133 S. Ct. 1552, 1561, 185 L. Ed. 2d 696, 707 (2013) (quoting the sentence from *McDonald*).

[6] *See People v. Eubanks*, 2019 IL 123525 (Ill. 2019) ("Previously, however, the Supreme Court had been clear that the burden of demonstrating exigent circumstances is on the State.  *Mitchell* appears to be saying that, in cases where the 'general rule' applies, the burden shifts to defendant to establish the lack of exigent circumstances.") (citations omitted); *Fourth Amendment-Search and Seizure-Warrantless Blood Draws-Mitchell v. Wisconsin*, 133 Harv. L. Rev. 302, 308 n.75 (2019) (stating the plurality opinion in *Mitchell* "puts the burden on the defendant to establish" the exigency exception does not apply).

[7] *Compare Mitchell*, 139 S. Ct. at 2535 n.3, 204 L. Ed. 2d at 1048 n.3 ("In each of [several listed] cases, the requirement that we base our decision on the 'totality of the circumstances' has not prevented us from spelling out a general rule for the police to follow." (quoting *McNeely*, 569 U.S. at 168, 133 S. Ct. at 1570, 185 L. Ed. 2d at 716 (Roberts, C.J., concurring))).  *See infra* note 4.

circumstances may render a warrantless search reasonable. The "burden" of proving exigency is on the government. The "result" must be determined on a case-by-case basis by trial courts, not by appellate courts. But, as a "general rule," when an officer "reasonably conclude[s]" there is not time to secure a warrant before ordering blood to be drawn, the trial court will find the exigent circumstances exception applies.[8]

My twenty years of experience deciding and reviewing Fourth Amendment motions to suppress belies the *Mitchell* plurality's casual assumption that the government's burden is so easily satisfied by a mere showing of unconsciousness. My point is demonstrated by the stark difference between the facts of this case and those of *Mitchell*. In *Mitchell*,[9] a City of Sheboygan

---

[8] The *Mitchell* plurality mentions in its "general rule" discussion the Chief Justice of the United States' concurring opinion in *McNeely*. 139 S. Ct. at 2535 n.3, 204 L. Ed. 2d at 1048 n.3 (quoting *McNeely*, 569 U.S. at 166, 133 S. Ct. at 1569, 185 L. Ed. 2d at 716 (Roberts, C.J., concurring)). The concurring opinion, as I read it, is not about the burden of proof. In fact, the opinion cites several "general rules" arising out of Supreme Court cases that said nothing about changing the burden of proof. *See McNeely*, 569 U.S. at 168, 133 S. Ct. at 1570, 185 L. Ed. 2d at 716-17 (Roberts, C.J., concurring) (discussing "an emergency aid exception," "a fire exception," and "a hot pursuit exception"). Rather, the *McNeely* concurring opinion states "the Court should be able to offer guidance on how police should handle cases like the one before us," and advocates for deference to the officer's judgment, stating, "If an officer could reasonably conclude that there is not [time to secure a warrant before blood can be drawn], the exigent circumstances exception applies by its terms, and the blood may be drawn without a warrant." 569 U.S. at 166-67, 133 S. Ct. at 1569, 185 L. Ed. 2d at 716 (Roberts, C.J., concurring); *see also* 569 U.S. at 175, 133 S. Ct. at 1574, 185 L. Ed. 2d at 721 (Roberts, C.J., concurring) (similar to the first quote); 569 U.S. at 173, 133 S. Ct. at 1573, 185 L. Ed. 2d. at 720 (Roberts, C.J., concurring) (similar to the second quote).

[9] This description of the facts of *Mitchell* is taken from the opinions of the Supreme Court of Wisconsin, 914 N.W.2d 151, 154-55 (Wis. 2018), *cert. granted*, 139 S. Ct. 915, 202 L. Ed. 2d 642 (2019), *and vacated and remanded*, 139 S. Ct. 2525, 204 L. Ed. 2d 1040 (2019), and the Court of Appeals of Wisconsin, 2017 WL 9803322 (Wis. Ct. App. 2017).

police officer spoke to a witness about an intoxicated man the witness had seen stumbling and almost falling before getting into a van and driving away. The officer located Mitchell thirty to forty-five minutes later walking near the municipal beach on Lake Michigan. He was wet, shirtless, and covered in sand, "similar to if you had gone swimming in the lake." His speech was slurred and he had "great difficulty in maintaining balance." The officer talked to Mitchell long enough for Mitchell to change his story at least once. The officer then searched for the van[10] and administered a preliminary breath test, all before arresting him for DUI. He made the arrest one hour and nine minutes after the witness made the initial report.

The officer then transported Mitchell to the police station. The duration of the drive is not discernable from the opinions. Mitchell's condition deteriorated during the drive, and by the time the officer reached the station, Mitchell could not get out of the car by himself. The officer then decided he must take Mitchell to the hospital. "During the approximately eight-minute drive to the hospital, Mitchell 'appeared to be completely incapacitated, [and] would not wake up with any type of stimulation.' At the hospital, Mitchell needed to be transported in a wheelchair where he sat 'slumped over' and unable to maintain an upright seating position." 914 N.W.2d at 155. The officer ordered the defendant's blood to be drawn at 5:59 p.m., approximately ninety minutes after the arrest and two hours and forty-two minutes after the witness made the initial report.

In *Mitchell*, therefore, the suspect's unconsciousness appears to have been a significant impediment to the officer's ability to get a warrant in a timely manner. At the scene, the suspect was conscious and somewhat responsive. The officer engaged in meaningful dialogue with him to determine what happened and whether there was probable cause for an arrest. The suspect did not lose consciousness until over an hour after the incident arose, when the officer had the suspect in custody by himself in the police car. The officer was in a bind at that point because the suspect's medical situation

---

[10] Nearby officers assisted in the search and ultimately found the van approximately two blocks away.

required the officer to immediately transport him to the hospital, and appears to have prevented him from pursuing a warrant or otherwise continuing his investigation. It would appear reasonable for the officer to conclude under those circumstances there was not time to secure a warrant.

The facts of this case are different from *Mitchell* in several significant respects. Key's collision occurred around 8:45 a.m. When Trooper Campbell arrived at the scene at 8:57, paramedics and fire fighters were already there. Trooper Campbell did not have to attend to any medical needs because paramedics were already loading Key into the ambulance and the driver of the other vehicle was not injured. The ambulance left the scene to deliver Key to the hospital minutes later. There is no indication in the record there were any traffic issues to handle. Muddy Ford Road is not a major road, but a short, two-lane road connecting several residential neighborhoods to the main traffic arteries in the area. During all this time, a magistrate judge was on duty at the Greenville Law Enforcement Center, less than ten miles from the accident scene and only three miles from the hospital.

In this case, therefore, it is not at all obvious that Key's unconsciousness played any role in hindering the officer's ability to obtain a warrant.[11] Within minutes after the incident, Key was in an ambulance headed to the hospital. There is no evidence Trooper Campbell faced any "urgent tasks." *See Mitchell*, 139 S. Ct. at 2538, 204 L. Ed. 2d at 1051 (hypothesizing "the accident might give officers a slew of urgent tasks"). When asked at trial what the officer did after the ambulance left, the officer testified he simply "complete[d] the accident report" and "went to the hospital." Whether these and other circumstances justify drawing Key's blood without a warrant will be explored in great detail on remand, but it hardly seems unreasonable for

---

[11] The *Mitchell* plurality suggests it is important that it was the suspect's unconsciousness that prevented the officer from administering a breath test. 139 S. Ct. at 2534, 204 L. Ed. 2d at 1047. That may have been true in *Mitchell*, but not here. The reason Trooper Campbell could not give Key a breath test is because paramedics determined her medical condition—unconscious or not—required she be immediately transported to the hospital. The breath test would have been administered at the Law Enforcement Center.

the South Carolina Highway Patrol to allocate its significant law enforcement resources in such a way as to accommodate Key's Fourth Amendment rights. As the Supreme Court noted in *McNeely*,

> Consider, for example, a situation in which the warrant process will not significantly increase the delay before the blood test is conducted because an officer can take steps to secure a warrant while the suspect is being transported to a medical facility by another officer. In such a circumstance, there would be no plausible justification for an exception to the warrant requirement.

569 U.S. at 153-54, 133 S. Ct. at 1561, 185 L. Ed. 2d at 708; *see also* 569 U.S. at 172, 133 S. Ct. at 1572, 185 L. Ed. 2d at 719 (Roberts, C.J., concurring) ("There might, therefore, be time to obtain a warrant in many cases.").

When the Supreme Court speaks, we must listen. We make every effort to ensure that our rulings conform not only to the Supreme Court's statements that are necessary to its decision, but even to the Supreme Court's dictum. *See Yaeger v. Murphy*, 291 S.C. 485, 490 n.2, 354 S.E.2d 393, 396 n.2 (Ct. App. 1987) ("But those who disregard dictum, either in law or in life, do so at their peril."). This duty on our part imposes a corresponding duty on the Supreme Court to speak carefully, to let us know with specificity when it has changed the law, and to describe the law in realistic terms that we and other courts may readily understand and apply.

That corresponding duty also applies to us. Pursuant to that duty, it is this Court's responsibility to guide the summary court to which this case will be remanded, and other South Carolina courts, on how to implement the Supreme Court's ruling in *Mitchell*. It is not enough for us to follow the State's suggestion that we merely quote the *Mitchell* plurality and let our trial courts figure out what it meant.

I firmly believe the Supreme Court did not change the law. Rather, the State bears the burden of proving exigent circumstances. As has always been the case, when the State chooses not to obtain a warrant before taking the blood of a suspect without her consent, the State must actually prove "that the exigencies of the situation made that course imperative." *McDonald*, 335 U.S. at 456, 69 S. Ct. at 193, 93 L. Ed. at 158; *see also Mitchell*, 139 S. Ct. at 2534, 204 L. Ed. 2d at 1047 ("And under the exception for exigent circumstances, a warrantless search is allowed when 'there is compelling need for official action and no time to secure a warrant.'" (quoting *McNeely*, 569 U.S. at 149, 133 S. Ct. at 1559, 185 L. Ed. 2d at 705)); 139 S. Ct. at 2537, 204 L. Ed. 2d at 1050 ("Thus, exigency exists when (1) BAC evidence is dissipating and (2) some other factor creates pressing health, safety, or law enforcement needs that would take priority over a warrant application.").